## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE MIDDLE DISTRICT OF FLORIDA

C.A.B., individually and
on behalf of R.B., a minor,

                                   CASE NO.:

      Plaintiffs,

v.

THE FRENCH AMERICAN SCHOOL OF TAMPA BAY, LLC

      Defendant.

_____/

## COMPLAINT (JURY TRIAL DEMANDED)

Plaintiffs, C.A.B., individually and on behalf of R.B., a minor (collectively "Plaintiff"), by and through undersigned counsel, and hereby sue Defendant, THE FRENCH AMERICAN SCHOOL OF TAMPA BAY, LLC ("FASTB" or "Defendant"), and states the following:

## OVERVIEW OF THE ACTION

R.B., a minor child with disabilities, and her mother, C.A.B, bring this action against THE FRENCH AMERICAN SCHOOL OF TAMPA BAY, LLC for redress of violations of R.B.'s rights under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504") and 42 U.S.C. §12181, *et seq.* for claims brought under Title III of the Americans with Disabilities Act, ("ADA"). Furthermore, this is also an action for fraudulent inducement and breach of contract. Plaintiff seeks monetary damages for the injuries suffered by R.B. and her mother, C.A.B. caused by the defendant's conduct, as well as injunctive relief, attorney's fees and court costs.

## JURISDICTION AND VENUE

1.    This is an action for injunctive relief, declaratory relief, and damages in excess of $75,000.00,

2.    The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the ADA/Section 504 claims arise under the Law of the United States.

3.    The Court has supplemental jurisdiction for the state law claims pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in the Tampa Division of the U.S. District Court for Middle District of Florida pursuant to 28 U.S.C. §§ 1391 (b)(1), and 1391 (b)(2); as the individual Defendant resides within this district, by reason of being domiciled within the district; a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred at Defendant's principal place of business located in St. Petersburg, Florida, which is within this district and division; and the Defendant's primary place of business is located at 2011 62nd Ave N, St. Peterburg, FL 33702, which is within this district and division.

## PARTIES

5.    The Plaintiff, C.A.B., is an individual, *sur juris* and the parent, mother, of R.B., a minor, and who resides in St. Petersburg, Florida.

6.    The Plaintiff, R.B., is a minor child and was a student, at all times relevant, of Defendants school. R.B. is an otherwise qualified individual with a disability as she met the standards requisite for admission and participation for FASTB's program even without receiving her accommodations and despite being placed at a disadvantage via disparate treatment by FASTB.

7.    The Defendant, THE FRENCH AMERICAN SCHOOL OF TAMPA BAY, LLC, Florida is a Florida limited liability company, principally located at 2100 62ND AVENUE N ST. PETERSBURG, FL 33702, that operates as a private school, primarily focused on imbuing its students with a multicultural experience through French immersion from early childhood

through grade 6.[1]   Defendant is a place of public accommodation consistent with 42 U.S.C. §

12181 (7)(J) as a place of education. Defendant is also a federal fund recipient subject to Section

504 of the Rehabilitation Act of 1973.

## GENERAL ALLEGATIONS

8.      R.B. is a former FASTB second grade student that was forced to withdraw from

FASTB after May 2022 due to disparate treatment of RB on the basis of her disability by FASTB

and FASTB's failure to provide RB reasonable accommodations for her disabilities.

9.      RB has a disability impairment that substantially limits one or more major life

activities. Specifically, her ability to hear, think, read, and learn. She is partially deaf in one ear

and has been diagnosed with Attention Deficit Hyperactivity Disorder.

10.      RB also has a record of such impairment. In or around June of 2021, R.B.

received an Individual Education Plan, consistent with the Individuals with Disabilities

Education Act ("IDEA"), facilitated by the school district that funds FASTB. At that time she

was identified as having a primary exceptionality of Other Health Impairment as a result of

having been diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD").

## ATTENDANCE AT FASTB

11.      R.B. was granted admission and enrolled at FASTB on or about August of 2019.

12.      Prior to matriculating at FASTB, C.A.B. met with the principal owners of

FASTB, WILLY LEBIHAN ("WL") and ELIZABETH LEBIHAN ("EL").

13.      During said meeting, C.A.B. expressed her desire to enroll R.B. in FASTB's

private school, however, she expressed concerns regarding R.B.'s disability and RB's ability to

thrive in a "French immersion" setting without reasonable accommodations for her disabilities.

Accordingly, at this meeting, C.A.B initiated the interactive process on behalf of R.B and

---

[1] https://fastb.org/about/

requested specific reasonable accommodations be made for RB's disabilities including but not limited to being seated in the front of her class due to her hearing impairment.

14.     FASTB, by and through WL and EL, ensured that R.B. would receive any and all disability accommodations necessary to ensure RB had meaningful access to FASTB's program (so she could reach her academic potential and graduate on time). See *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1299 (S.D. Fla. 2015) ("Meaningful participation and access to an academic program includes the *opportunity* to advance to the next academic year on the regular schedule and to achieve one's academic potential on a leveled playing field with one's peers.")

15.     At the time of enrollment, FASTB was provided actual notice of R.B.'s disability when C.A.B. provided FASTB a copy of R.B.'s then current Individual Education Plan from Colorado. When provided the Individual Education Plan, FASTB assured C.A.B. that R.B. would be provided all necessary accommodations then enumerated in R.B.'s Individual Education Plan, and any additional accommodations necessary for her to succeed at FASTB.

16.     Tuition at the time of enrollment, and during subsequent years was approximately $13,000 per year.

17.     RB started her studies full time (5 days a week from 8:30am-3:00pm) at FASTB in kindergarten for the 2019-2020 school year. She was one of 9 or so students in her class. Mrs. Magali was her teacher. RB did well in her class even though her attention deficit issues had not been identified yet.

18.     In Fall 2020, RB had Mrs. Magali again for first grade at FASTB. She did well again despite Mrs. Magali and Mr. Olivier (head teacher at FASTB who is married to Mrs. Magali) suggesting that RB be evaluated for problems with attention. Mrs. Magali noted in her evaluations that RB was not reaching her academic potential but still excelled academically.

19.    Accordingly, in December 2020, CAB had RB evaluated by Dr. Kristin Edwards who is a Licensed Clinical Psychologist in Florida to determine her current level of intellectual functioning. RB Full Scale IQ measured in the High Average range when compared to others her age. Dr. Edwards noted in several places how using praise, encouragement, and positive reinforcement could help RB with her learning objectives. Dr. Edwards also suggested that RB sit close to the teacher who may need to repeat instructions or even show directions to RB to help her follow the lessons.[2]

20.    In June 2021, the Pinellas County School District was given access to the private evaluation from Dr. Kristin Edwards of RB and observed RB in the classroom at FASTB to make sure there was an IEP in place for RB. Needs identified included be more attentive and show more interest in the French language. IEP suggested the following accommodations to be implemented for RB:

-Use of an individual daily filled document

-Additional time on task, verbal encouragement and prompting, and frequent breaks to move through the general education curriculum.

-Progress reports provided once every marking period

-State assessments

-Assignments administered over several brief sessions, allowing frequent breaks

-Extended time up to double the allotted time

---

[2] These suggestions were being implemented in Mrs. Magali's classroom through FASTB's own personal success plan for RB, where RB thrived. None of this happened in Mrs. Marion's class. The exact opposite happened with Mrs. Marion giving RB consistently negative feedback which was witnessed by the au pairs. Mrs. Marion would give the activities to the au pairs to complete with RB instead of sitting with her and helping her complete/correct these activities.

-Near the teacher/preferential seating, desk material restriction, presence of the teacher as often as possible, discussions with the parent, use of a class behavior chart (including two behaviors of speaking in French).

21.     FASTB was given an updated copy of the IEP prior to the start of the Fall 2021 semester.

22.     Relatedly in Fall 2021, for second grade, FASTB'S switched RB'S teacher to Mrs. Marion, who was a new teacher at this school. From the beginning, Mrs. Marion seemed overwhelmed with the number of the students in her class. She had 11 students in second grade and was given 7 first grade students as well for a total of 18 students in a combined classroom of first and second graders. As a result, around this time at the beginning of the Fall 2021 semester, CAB met in person with Mrs. Marion and Mr. Olivier (the head of faculty) to discuss the aforementioned issues and RB's disability accommodations moving forward.

23.     At this meeting, FASTB agreed to grant CAB's request that the specific accommodations listed in the June 2021 IEP listed by the Pinellas School District be implemented for RB. Nonetheless, despite this agreement, FASTB insisted at this meeting that CAB provide an assistant for RB to be with her in class. This helper was not required to speak French and did not have to be a teacher. CAB reluctantly agreed to provide this assistant (Ivana and Bianca).

24.     C.A.B. was under the impression for much of the second grade school year that FASTB was teaching R.B. as promised and providing her the reasonable accommodations it agreed to grant that were listed in the June 2021 IEP plan. CAB even hired additional tutors for RB as a precautionary measure for RB to ensure she would reach her academic potential despite already have the perception that RB was receiving all of her disability accommodations.

Unfortunately, unbeknownst to CAB until May 2022, FASTB failed to provide RB with any of these reasonable accommodations it had agreed to grant and implement. Specifically:

-With regard to the accommodation of *Placement near the teacher/preferential seating*, FASTB failed to provide this accommodation as RB was not placed near the teacher but seated away from the teacher in the back of the class isolated from the other students.

-With regards to the accommodation of *Presence of the teacher as often as possible* – FASTB failed to provide this accommodation to RB because Mrs. Marion would always give Ivana and Bianca the work to complete with RB despite Ms. Marion devoting extensive one on one time to other nondisabled students throughout the year.

- With regard to the accommodation of *Discussions with the parent* –FASTB failed to provide this reasonable accommodation as there was no discussion with CAB about the RB not meeting grade-level expectations until the very end of the school year.

-With regards to the accommodations of *Use of a class behavior chart* (including two behaviors of speaking in French and concentrating in class) – FASTB failed to provide this reasonable accommodation to as Mrs. Marion never even attempted this.

-With regard to the accommodation of *Shadow the teacher for 1 hour, 30 minutes 5 days a week* – FASTB failed to provide this reasonable accommodation because Ms. Marion never did this.

-With regard to the accommodation of *Use of an individual daily filled document* – FASTB failed to provide this reasonable accommodation because although RB had an agenda with homework assignments, there was no document of her behavior throughout the day. There was also no checklist or visual schedule.

-With regard to the accommodation of *additional time on task, verbal encouragement and prompting, and frequent breaks to move through the general education curriculum*. FASTB failed to provide RB with this reasonable accommodation because RB was ostracized by FASTB and made to feel bad about herself by FASTB via Ms. Marion ould say things like, "You deal with her. I don't have time for her." These comments were made in English in front of the whole class.

-With regard to the accommodation of *Progress reports will be provided once every marking period* – FASTB failed to provide this reasonable accommodation as there was nothing that said RB was failing to meet the academic requirements of FASTB's program and was going to be held back to the point of not only being held back one grade level, but two grade levels. With the exception of a comment that stated that RB needed to work on her concentrating skills, all of her progress reports, nonetheless, stated she was passing and indicated she would move on to the next grade level.

With regards to the accommodation of *state assessments* –FASTB failed to provide this reasonable accommodation as CAB was never notified about RB results.

With regards to the accommodation of *Assignments administered over several brief sessions, allowing frequent breaks* – FASTB failed to provide this accommodation for any assignment.

With regard to the accommodation of *Extended time up to double the allotted time* – FASTB failed to provide to provide this accommodation for any

25.    Worse yet, in April 2022, FASTB sent out a school wide email stating it was changing the curriculum and academic requirements for students. This was less than one month prior to the end of the school year and with no say from any of the parents. FASTB never

8

contacted CAB to discuss the effect this change would have on RB's learning experience and her accommodations.

26.     Then finally, in May of 2022, FASTB informed C.A.B. that R.B. would likely have to repeat the first grade[3] because according to FASTB, RB's proficiency in French was lackluster at best.

27.     At no point prior to communications received in May of 2022, was it made apparent to C.A.B. that these proficiency issues had arisen and R.B. would be placed in the first grade as a result. RB had already passed first grade and was taking second grade French classes with Ms. Marion. More suspect is that the school deliberately delayed releasing RB's report card. Upon information and belief, this was done because the school became aware that CAB had contacted an attorney.

28.     Relatedly, at this point CAB began investigating the matter and came to realize that R.B. had been placed in the furthest seat from Ms. Marion in her classroom with the *au pair*. Plaintiff can provide the Court with pictures if necessary.

29.     In fact, Ms. Marion had all but ignored R.B. during the entire school year and simply allowed the *au pair* to "babysit" R.B. while she focused on her other students (deliberate indifference).

30.     At this time, CAB also became aware that FASTB via Ms. Marion also failed to provide RB with the other disability accommodations RB was entitled to that were mentioned *supra*. Instead, Ms. Marion intentionally and deliberately placed R.B. in the corner of the classroom, subjected RB to disparate treatment by refusing to dedicate any one on one time to RB while providing time to other non disabled students, and retaliating/intentionally

---

[3] It is important to note that R.B. was in second grade at this point

discriminating against RB on the basis of her disability and on the basis by not advancing her to the next academic grade and using a pretextual reason that RB stating was not proficient in French which forced RB to withdraw from the program.

31.    CAB requested the reasonable accommodation that RB not be held back and allowed to progress to the third grade along with her peers given all the issues with FASTB failing to provide RB with her accommodations and the disparate treatment by FASTB via Ms. Marion.  CAB's rationale for this request was that RB's true academic performance in French could not be measured due to FASTB's gross incompetence in failing to provide RB with her reasonable accommodations that was she was entitled to and disparate treatment by Ms. Marion.

32.     Ultimately, this request was denied, forcing RB to withdraw from the program. This lawsuit followed.

## COUNT I: VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT
### (42 U.SC. 12181 *et seq)*

33.    Plaintiff revers and realleges paragraphs 1 through 30 as if set forth fully herein and further state the following:

34.    Title III provides " "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a)"

35.    Public accommodations are prohibited from subjecting "an individual or class of individuals on the basis of a disability . . . directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit

from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i).

36.     Title III further provides" a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations"

37.     Title III further provides "Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals"

38.     "Any private entity offering an examination covered by this section must assure that -  The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure)." 28 CFR § 36.309 (b) (1) (i)

39.     "Any private entity that offers a course covered by this section must make such modifications to that course as are necessary to ensure that the place and manner in which the course is given are accessible to individuals with disabilities. Required modifications may include changes in the length of time permitted for the completion of the course, substitution of

specific requirements, or adaptation of the manner in which the course is conducted or course materials are distributed." 28 CFR § 36.309 (c) (1) (2)

## **FAILURE TO ACCOMMODATE**

40.      R.B. is an otherwise qualified individual with a disability under the ADA as she meets the standards requisite for admission with or without reasonable accommodations.

41.      FASTB discriminated against R..B. on the basis of her disability by failing to provide R.B. with the reasonable accommodations listed in her IDEA report and the schools own personal success plan that it had approved RB for.

42.      Providing RB with these reasonable accommodations listed in her IDEA report and the schools own personal success plan, FASBT would have not caused a fundamental alteration or undue burden to FASTB's academic program because FASTB approved of the accommodations and agreed RB was entitled to them under the Law. FASBT simply failed to provide these accommodations and thus discrminated against CB, whether intentional or not. Further, Ms. Magali had already provided some of these accommodations the year before where RB thrived further proving it would not have caused  fundamental alteration of the program nor undue burden.

## **DISPARATE TREATMENT**

43.      FASTB  discriminated against RB on the basis of her disability denying her equal access, benefits, services via disparate treatment by isolating her for her entire second grade year and forcing her to sit in the back of the class. No other student in RB's class was isolated in this manner and forced to sit in the back of the class, only RB, the disabled student, was subjected to this humiliation and learning obstacle by FASTB that put RB to disadvantage compared to her non disabled peers.

44.    FASTB discriminated against RB on the basis of her disability denying her equal access, benefits, services via disparate treatment by holding her back two years in terms of her education by not letting her advanced to the third grade under the pretext that she was not proficient in French. The nondiscriminatory reason FASTB gave was false because RB's had already passed first grade French and RB's academic potential in French has never been effectively assessed by FASTB due to their failure to provide RB with her reasonable accommodations she was entitled to and due to the fact that they put RB at a disadvantage comparted to her peers by: (1) isolating her  in the back of the class despite knowing she was hearing impaired. No other student was isolated in his manner. Only RB, the disabled student, was isolated. (2) The reason was also pretextual because none of the progress reports through the entire year indicated that RB would be held back two years. (3) The new principal of the school changed the academic curriculum in April 2022 less than one month before the end of the year. Such a decision would not be subject to academic deference. *See Sharick v. Southeastern University,* 780 So. 2d 136, 138 (Fla. Dist. Ct. App. 2000) (""It is generally accepted that the terms and conditions for graduation are those offered by the publications of the college at the time of enrollment. As such, they have some of the characteristics of a contract between the parties, and are sometimes subject to civil remedies in courts of law." ")(citations omitted).

45.    FASTB discriminated against RB on the basis of her disability denying her equal access, benefits, services, via disparate treatment when Ms. Marion would go out of her away to help and tutor RB's non disabled peers, but then, not provide nor offer this same access/services/benefits to RB until the last three days of the school year right before she was forced to withdraw.

46.     FASTB discriminated against RB on the basis of her disability denying her equal access, benefit, services, via disparate treatment by constantly ostracizing RB on the basis of her disability and making comments such as " You deal with her. I don't have time for her" in front of the whole class.

47.     Plaintiff is entitled to injunctive relief.

48.     Plaintiff is entitled to reasonable attorneys fees and costs.

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 (29 U.S.C. § 794)

49.     Plaintiff reavers and realleges paragraphs 1-30 as if fully set forth herein and further state the following:

50.     Section 504 provides: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

51.     R.B. is an otherwise qualified individual with a disability under Section 504 as she meets the standards requisite for admission and participation for FASTB's academic program with or without reasonable accommodations as demonstrated by her progress reports that clearly showed she was passing despite being placed at disadvantage compared to the other students and shown by the fact that she had already passed to the first grade.

52.     FASTB discriminated against R..B. on the basis of her disability by failing to provide R.B. with the reasonable accommodations listed in her IDEA report that it had approved her for.

53.     Providing RB with these reasonable accommodations listed in her IDEA report FASBT would have not caused a fundamental alteration or undue burden to FASTB's academic

program because FASTB approved of the accommodations and agreed RB was entitled to them under the Law. FASBT simply failed to provide these accommodations and thus discrminated against CB, whether intentional or not.

## DISPARATE TREATMENT

54.    FASTB  discriminated against RB on the basis of her disability denying her equal access, benefits, services via disparate treatment by isolating her for RB's entire second grade year and forcing her to sit in the back of the class. No other student in RB's class was isolated in this manner and forced to sit in the back of the class, only RB, the disabled student, was subjected to this humiliation by FASTB and put to a disadvantage compared to her non disabled peers.

55.    FASTB discriminated against RB on the basis of her disability denying her equal access, benefits, services via disparate treatment by holding her back two years in terms of her education under the pretext that she was not proficient in French. The nondiscriminatory reason FASTB gave was false because RB's academic potential in French has never been effectively assessed by FASTB due to their failure to provide RB with her reasonable accommodations she was entitled to and due to the fact that they put RB at a disadvantage comparted to her peers by: (1) isolating her  in the back of the class despite knowing she was  hearing impaired. No other student was isolated in his manner. Only RB, the disabled student, was isolated. (2)The reason was also pretextual because the new principal of the school changed the academic curriculum in April 2022 less than one month before the end of the year. Such a decision would not be subject to academic deference. *See Sharick v. Southeastern University,* 780 So. 2d 136, 138 (Fla. Dist. Ct. App. 2000) (""It is generally accepted that the terms and conditions for graduation are those offered by the publications of the college at the time of enrollment. As such, they have some of

the characteristics of a contract between the parties, and are sometimes subject to civil remedies in courts of law." ")(citations omitted).

56.     FASTB discriminated against RB on the basis of her disability denying her equal access, benefits, services, via disparate treatment when Ms. Marion would go out of her away to help and tutor RB's non disabled peers, but then, did not provide nor offer this same access/services/benefits to RB until the last three days of the school year right before she was forced to withdraw.

57.     Plaintiff was stigmatized and deprived of opportunities for enriching interaction with fellow students by Defendant(s) refusal to accommodate her disability-related needs at school.

## RETALIATION/INTEFERENCE CLAIMS

58.     Section 504 also incorporates the anti-retaliation provision of Title V of the ADA which states in pertinent part:

42 U.S.C. § 12203 states in pertinent part:

" (a) Retaliation

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

" (b)Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed,

or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

59.    Plaintiff engaged in the protected activity of requesting reasonable accommodations be made by the school for RB's disability. Defendant retaliated against Plaintiff by taking the adverse action of not allowing her to advance to the third grade. There is a casual relation between Plaintiff's protected status and the adverse action because the head of the school only became aware of Plaintiff's disability one month before the adverse action in April 2022 when she took over the new position and prior to that there was no indication in the progress reports that Plaintiff would not advance to third grade. It is Defendant's burden to provide a nondiscriminatory explanation for not only being forced to repeat second grade, but first grade as well and for all of a sudden stating she would not be allowed to advanced to third grade when all her previous progress reports indicated otherwise.

60.    Plaintiff engaged in the protected activity of requesting reasonable accommodation and enjoying the right to request accommodations from the school and participate in activities at the school. Defendant's interfered with this experience by refusing to provide RB with any of her accommodations, arbitrarily failing her at the end of second grade, and even stating she would have to repeat not only second grade, but first grade as well.

61.    Plaintiff is entitled to damages because of Defendant's deliberate indifference to her federal disability rights including but not limited to economic/opportunity loss damages suffered by RB for being held back two years in her education.

62.    Plaintiff is entitled to injunctive relief.

63.    Plaintiff is entitled to reasonable attorneys fees and costs.

**<u>BREACH OF CONTRACT</u>**

64.    Plaintiff revers and realleges paragraphs 1 through 30, as if set forth fully herein and further allege the following:

65.    Plaintiff entered into a contract implied in fact wherein Plaintiff paid Defendant tuition in exchange for certain services to be provided by Defendant including, but not limited to, the expectation that Defendant abide by the terms of enrollment that were agreed to on prior to RB matriculating at FASTB and the expectation that FASTB abide by these terms so RB could reach her academic potential and advance to the next grade level. These terms also included FASTB's academic policies and regulations at the time RB enrolled in the program.

66.    Defendant materially breached this contract implied in fact by arbitrarily failing Plaintiff without justification for the second grade year and stating she would have to repeat not only second grade, but first grade as well.

67.    Defendant materially breached it's contract implied in fact by changing the academic curriculum and terms of enrollment in April 2022 right before the end of the school year that resulted in RB being forced to withdraw from the program and denied advancement to third grade.

68.    Plaintiff has incurred damages because of Defendant's multiple material breaches and entitled to an award of damages for the arbitrary failure of Plaintiff at the end of second grade.

## FRAUDULENT INDUCEMENT

69.    Plaintiff reavers and realleges paragraphs 1 through 30 as if set forth fully herein and further allege the following:

70.    Defendant fraudulently induced Plaintiff to enter into the implied contract of enrollment by promising that RB would be provided any and all disability accommodations

necessary for RB to reach her academic potential and representing to Plaintiff's at the time of enrollment, that FASTB was a school that did not engage disability discrimination.

71.    Plaintiff justifiably relied on these representations that induced them to enter into the implied contract of enrollment as Plaintiff had no reason to believe that Defendant was an institution that deliberately engaged in disability discrimination as a matter of policy.

72.    Defendant intended for Plaintiff to rely on these fraudulent misrepresentations just to get RB's tuition money as demonstrated by the fact that they never provided RB with any accommodation, subjected her to disparate treatment, and  as demonstrated by the fact that the schools own nondiscrimination policy on it's website as of 12/18/22 implies via omission that it will intentionally discriminate against the disabled:

> *"Notice of Nondiscriminatory Policy as to Students: The French American School of Tampa Bay admits students of any race, color, national and ethnic origin to all the rights, privileges, programs, and activities generally accorded or made available to students at the school. It does not discriminate on the basis of race, color, sexual orientation, or national and ethnic origin in the administration of its educational policies, admissions policies, scholarship and loan programs, and athletic and other school-administered programs."*

73.    Such a policy that deliberately omits a nondiscrimination policy for the disabled despite being required by the United States Department of Education as a prerequisite to receive to federal funding clearly shows Defendant's fraudulent motive.

74.    Plaintiff has incurred damages because of Defendant's intentional misconduct.

75.    Plaintiff requests that the Court award Plaintiff punitive damages and compensatory damages for Defendant's intentional misconduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for:

1) An injunction restoring the status quo (to the extent possible) prior to RB being held back and reinstating RB into the 3rd grade along with her peers so she can graduate on time.

2) An injunction requiring Defendant to provide Plaintiff with all of her accommodations.

3) An Order awarding Plaintiff compensatory damages due to Defendant's deliberate indifference to Plaintiff's federal disability rights under the Rehab Act.

4) An Order awarding Plaintiff the maximum statutory amount of punitive damages in the State of Florida for Defendant's intentional misconduct and fraud: $2 million.

5) An Order requiring Defendant to pay for the two years of tuition plus fees.

6) An Order requiring FastB to pay tutoring fees spent by CAB each year.

7) An Order requiring that FastB pay for the French tutoring costs/damages incurred by RB/CAB each summer.

8) An Order requiring that FASTB pay for the French tutoring costs/damages incurred by RB/CAB during the regular school year.

9) An Order requiring that FASB pay for the cost of the au pair.

10) An injunction requiring that Defendant eliminate the discriminatory communication barriers it currently has within the school and allow CAB to communicate with Beth instead of Corrine and any other person CAB deems it necessary to communicate with to advocate for her daughter.

11) An Order awarding reasonable attorney's fees and costs.

12) An Order awarding damages for the state law claims.

13) Any other relief the Court deems just and proper and to be determined at trial.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all matters so triable as a right.

Respectfully submitted this 2nd day of February, 2023

*/s/ Nathan Soowal*
Nathan Soowal, Esq.
Fla. Bar No.: 1002633
Nathan Soowal, P.A.
3140 NE 9th Ave
Pompano Beach, FL 33064
nathansoowallaw@gmail.com
954 531 4851
